# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LOUISE DAVIS, *et al.*,

    Plaintiffs,

      v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 15-1194 (JEB)

## MEMORANDUM OPINION

This litigation began over three years ago when Louise Davis — by herself and on behalf of her daughter, N.D. — filed suit against the District of Columbia, alleging that it had violated the Individuals with Disabilities Education Act and denied N.D. a free and appropriate public education. The Court ultimately sided with Plaintiffs on some issues, but not on others. The parties now return for one final matter. Davis has moved for approximately $65,000 in attorney fees. Concluding that Plaintiffs are entitled to some, but not all, of the award they seek, the Court will grant in part and deny in part the Motion.

## I.      Background

Davis filed this IDEA suit in July 2015. See Davis v. District of Columbia, 244 F. Supp. 3d 27, 37 (D.D.C. 2017). The background of that dispute, which stretches over many years, is thoroughly rendered in the Court's previous Opinion. Id. at 31–37. For now, a brief sketch will do.

The purpose of IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). Davis alleged that the District

violated the statute by (1) failing to develop an appropriate Individualized Education Program (IEP) in November 2013; (2) impermissibly exiting N.D. from special-education services in May 2014; and (3) neglecting to order additional occupational-therapy and auditory-processing evaluations. See ECF No. 1 (Complaint), ¶¶ 36–44, 46–51, 54–57. As relief, Plaintiffs requested that the Court "conclude that Defendant denied N.D. a free appropriate public education, reinstate her special education services, order occupational-therapy and auditory-processing testing, and award some amount of compensatory education." Davis, 244 F. Supp. 3d at 37.

On March 23, 2017, the Court granted in part and denied in part each party's motion for summary judgment. The District prevailed on the first issue because the Court determined that the reductions in services accompanying the November 2013 IEP modification were appropriate based on N.D.'s needs. See Davis, 244 F. Supp. 3d at 39–42. On the second issue, results were mixed: Plaintiffs did not obtain the declaration they sought that N.D. had been inappropriately exited from special education, but the Court remanded to the administrative hearing officer with instructions to clarify and apply the correct legal standard to determine whether N.D. was properly deemed ineligible. Id. at 45–47, 51–52. On remand, the hearing officer found that Plaintiffs "did not meet [their] burden of persuasion" on N.D.'s eligibility and accordingly denied relief. See ECF No. 28 (Plaintiffs' Motion for Attorney Fees), Exh. 7 (Hearing Officer Decision on Remand) at 16. Finally, on the third issue, Davis succeeded, and the Court ordered the District "to conduct . . . or . . . fund" the additional evaluations. See Davis, 244 F. Supp. 3d at 52.

In seeking fees here, Plaintiffs believe themselves entitled to $65,448.54. See Pl. Mot. at 6. The District agrees they should collect some fees but suggests the award should be considerably less: $20,782.64. See ECF No. 30 (Defendant's Opposition) at 2.

## II. Analysis

IDEA confers on the Court discretion to "award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability" in an action under the Act. See 20 U.S.C. § 1415(i)(3)(B)(i)(I). In determining what amount, if any, is appropriate under the statute, the Court makes two inquiries. First, it decides whether the party seeking fees is "the prevailing party" and is thus eligible to receive fees. See Jackson v. District of Columbia, 696 F. Supp. 2d 97, 101 (D.D.C. 2010). If so, the next question is whether the fee sought is reasonable. A "reasonable" fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case," Perdue v. Kenny A., 559 U.S. 542, 552 (2010), "but [that does] not produce windfalls to attorneys." Blum v. Stenson, 465 U.S. 886, 897 (1984). The plaintiff has the burden of establishing reasonableness. See In re North, 59 F.3d 184, 189 (D.C. Cir. 1995).

The District "does not dispute that Plaintiffs are partial prevailing parties . . . and . . . [so] are entitled to recover some attorney's fees." Def. Opp. at 1. The only issue therefore is whether the amount of the award Plaintiffs request is reasonable. On that issue, the D.C. Circuit has set forth a "three-part analysis." See Eley v. District of Columbia, 793 F.3d 97, 100 (D.C. Cir. 2015) (evaluating fees under IDEA); Salazar v. District of Columbia, 809 F.3d 58, 61 (D.C. Cir. 2015) (applying framework to § 1983 fee request). The first step is to "determine the 'number of hours reasonably expended in litigation.'" Salazar, 809 F.3d at 61 (quoting Eley, 793 F.3d at 100). As part of that inquiry, the Court considers whether to adjust the award based on "the

degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983). Next, the Court

sets "the reasonable hourly rate." Salazar, 809 F.3d at 61 (quoting Eley, 793 F.3d at 100). The

Court lastly applies "multipliers as 'warranted.'" Id.; see also George Hyman Const. Co. v.

Brooks, 963 F.2d 1532, 1535–36 (D.C. Cir. 1992).

Defendant challenges Davis's request for fees under the first and second steps of the D.C.

Circuit's framework. In other words, neither party contends that a multiplier is warranted at the

third step. The Court will therefore address the first two steps in turn.

A.      Hours Reasonably Expended

The District contends principally that Plaintiffs' fee award should be reduced by 66%

because they prevailed on only one of their three claims. See Def. Opp. at 8–9. Davis concedes

that some reduction is appropriate but maintains that slashing the amount by two thirds is

excessive. See ECF No. 31 (Plaintiffs' Reply) at 5. Rather, Plaintiffs urge that a 10–20% trim is

all that is warranted. Id. Analyzing the extent of their success, the Court arrives somewhere in

the middle and concludes a 50% reduction makes sense.

As an initial matter, the Court rejects Defendant's mechanical formulation that success on

one of three claims should result in a 66% cut. This Court "has discretion in determining the

amount of a fee award," and "[g]iven the interrelated nature of the facts and legal theories in this

case," it need not "apportion the fee award mechanically on the basis of [Plaintiffs'] success or

failure on particular issues." Hensley, 461 U.S. at 437–38. Rather, courts in this district

examine the relative importance of issues on which plaintiffs succeeded in weighing what

reduction, if any, is appropriate. See, e.g., Platt v. District of Columbia, 168 F. Supp. 3d 253,

263–64 (D.D.C. 2016) (cutting award by 15% where plaintiff prevailed on three of eight issues);

Taylor v. District of Columbia, 187 F. Supp. 3d 46, 55–56 (D.D.C. 2016) (reducing fees by 10%

where plaintiff prevailed on three of five issues); <u>Brown v. District of Columbia</u>, 80 F. Supp. 3d 90, 101 (D.D.C. 2015) (assessing a 10% reduction "[g]iven that plaintiff prevailed on the most important aspects of his claims").

To refresh, Plaintiffs brought three claims. They alleged that "the District denied [N.D.] a free and appropriate public education when it reduced [her] services in the Revised 2013 IEP, found her ineligible for special education later in that grade, and failed to follow independent recommendations that testing in other areas of disability be done." <u>Davis</u>, 244 F. Supp. 3d at 38. The Court ruled for the District on the first claim, remanded the second to the hearing officer for additional analysis under the correct legal standard, and found for Plaintiffs on the third. <u>Id.</u> at 42, 47, 51–52. Davis did not ultimately prevail on the second claim before the hearing officer on remand. <u>See</u> Hearing Officer Decision on Remand.

Her success can thus best be described as middling. She obtained some of the relief she sought — namely, as a result of her success on the third claim, the Court did "[o]rder the Defendant to fund or conduct [additional] . . . evaluations." Compl. at 10. Her defeat on the first means, however, that the Court did not "find that N.D. was denied [a free and appropriate public education] on each of the alleged issues," nor did it require "Defendant to provide compensatory education." <u>Id.</u> Finally, although Plaintiffs succeeded in getting a remand on the second claim, they did not obtain the relief they sought — <i>viz.</i>, that the Court "[o]rder . . . Defendant to reinstate N.D.'s eligibility for special education." <u>Id.</u> The last issue does not cut against Davis entirely, however, as she does not request fees for time expended on the unsuccessful remand. <u>See</u> Pl. Mot. at 4 n.1. While the time her attorneys spent in this Court on the second claim did not result in a reinstatement order, obtaining a remand was not failure.

The Court, consequently, will render a split verdict. Obtaining the additional evaluations for N.D. was, no doubt, a significant form of relief for Davis. While she did not garner a declaration that the 2013 IEP was inappropriate or that N.D.'s special-education services had to be restored, her challenge to the hearing officer's conclusion that termination of those services was appropriate was meritorious enough to warrant a remand. Given that mixed bag, the Court finds a 50% reduction appropriate.

B.  Reasonable Rate

1.  *Rate for IDEA Litigation*

The parties next dispute what constitutes a reasonable hourly rate by which the Court should calculate fee awards for IDEA matters in the District. IDEA states that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. §1415(i)(3)(C). "Fee applicants in IDEA cases have relied on two separate, but inter-related, approaches to providing evidence of prevailing market rate." Reed v. District of Columbia, 843 F.3d 517, 521 (D.C. Cir. 2016). They can demonstrate that IDEA litigation qualifies as "complex federal litigation," or they can "provid[e] evidence of the fees charged, and received, by IDEA litigators." Id.; see also Flood v. District of Columbia, 172 F. Supp. 3d 197, 210 (D.D.C. 2016). Here, Plaintiffs limit their arguments to the latter approach. The Court, consequently, will address only that one. See James v. District of Columbia, 302 F. Supp. 3d 213, 219–20 (D.D.C. 2018) (analyzing only the second approach where "Plaintiff invoke[d] the second method of establishing the prevailing market rate").

Plaintiffs maintain that because they "can demonstrate that the rates charged, based on discounts from the USAO Matrix rates, are at or below rates customarily charged by IDEA

practitioners," their rate is reasonable. See Pl. Mot. at 8–9. Defendant recognizes that "Plaintiffs [are requesting reimbursement] at a lower hourly rate than [that] in the USAO Matrix" but argues that the "hourly rate is nevertheless still inappropriate because the correct hourly rate for IDEA cases in this jurisdiction is three-quarters of the USAO or Laffey Matrix." Def. Opp. at 11–12. The Court agrees with the District that the appropriate rate is 75% of that in the Matrix because Plaintiffs have not been able to show their higher rate is reasonable.

They have not "provid[ed] evidence of the fees charged, and received, by IDEA litigators" in the District. Reed, 843 F.3d at 521. While Davis offers two affidavits from her own attorneys averring that the rates they charge are in line with those attorneys in the District providing similar services, see Pl. Mot., Exh. 3 (Verified Statement of Roberta L. Gambale), ¶¶ 11–13; Pl. Mot., Exh. 4 (Verified Statement of Robert W. Jones), ¶¶ 12–14, she has not met her "burden" to "produce satisfactory evidence — in addition to [her] attorneys['] own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Eley, 793 F.3d at 100, 104 (quoting Blum, 465 U.S. at 895 n.11).

The only other evidence she offers takes the form of four cases from this district where the court has found the full Matrix rate appropriate for IDEA litigation. In each of those cases, however, the district court had before it additional declarations from a variety of comparable practitioners in D.C. explaining that their rates are in line with what the attorneys in those cases charged. See Merrick v. District of Columbia, 316 F. Supp. 3d 498, 512–13 (D.D.C. 2018) (weighing five declarations on the complexity of IDEA litigation and reasonable rate); Wimbish v. District of Columbia, 251 F. Supp. 3d 187, 192 (D.D.C. 2017) (reviewing "in addition to affidavits from [the plaintiff's] attorneys . . . nine affidavits from IDEA practitioners in this

jurisdiction"); Copeland v. District of Columbia, 208 F. Supp. 3d 255, 257 (D.D.C. 2016) (describing the submission of, "in addition to detailed affidavits from [the plaintiff's] own attorneys, . . . affidavits from five IDEA practitioners, unaffiliated with this litigation, all of which support Plaintiff's contention that IDEA litigators commonly charge and are awarded standard Laffey rates, and that rates significantly below that measure in this case would be insufficient"); Flood v. District of Columbia, 172 F. Supp. 3d 197, 211 (D.D.C. 2016) (considering five additional declarations from attorneys specializing in a variety of related areas). Unlike in those cases, Plaintiffs offer no declarations beyond those of their own attorneys.

Even if the Court were to consider those four citations to be somewhat persuasive evidence of the prevailing market rate, they cannot overcome the scores of district-court decisions here where attorney fees in IDEA matters have been awarded at 75% of the USAO Matrix rate. See, e.g., James, 302 F. Supp. 3d at 221–22 ("Moreover, even were the court to credit these [several recent cases in this district in which judges have awarded the USAO Matrix rates], they are too few in number to meet Plaintiff's burden of establishing the prevailing market rate," particularly "because 'an overwhelming number of cases' in this district have awarded 'IDEA fees [that] adopt rates equivalent to seventy-five percent of Laffey Matrix rates.") (quoting Cox v. District of Columbia, 264 F. Supp. 3d 131, 145 (D.D.C. 2017) (other internal citations omitted)); Joaquin v. Friendship Public Charter School, 188 F. Supp. 3d 1, 20 (D.D.C. 2016), appeal dismissed, No. 16-7084, 2017 WL 2332623 (D.C. Cir. Feb. 22, 2017) ("The Court therefore finds that the prevailing rates in the community for IDEA litigation are those equivalent to seventy-five percent of Laffey Matrix rates."); Brown v. District of Columbia, 80 F. Supp. 3d 90, 98 (D.D.C. 2015); Cook v. District of Columbia, 115 F. Supp. 3d 98, 103–04 (D.D.C. 2015); Briggs v. District of Columbia, 73 F. Supp. 3d 59, 63–64 (D.D.C. 2014); Douglas v. District of

Columbia, 67 F. Supp. 3d 36, 42–43 (D.D.C. 2014); McAllister v. District of Columbia, 53 F. Supp. 3d 55, 60–61 (D.D.C. 2014); Haywood v. District of Columbia, No. 12-1722, 2013 WL 5211437, at \*6 (D.D.C. Aug. 23, 2013); Davis v. District of Columbia, 864 F. Supp. 2d 110, 119 (D.D.C. 2012); Flores v. District of Columbia, 857 F. Supp. 2d 15, 22 (D.D.C. 2012); Huntley v. District of Columbia, 860 F. Supp. 2d 53, 59–60 (D.D.C. 2012); Petway v. District of Columbia, 858 F. Supp. 2d 70, 78 (D.D.C. 2012); Sykes v. District of Columbia, 870 F. Supp. 2d 86, 96–97 (D.D.C. 2012); Wood v. District of Columbia, 864 F. Supp. 2d 82, 92 (D.D.C. 2012).  This Court, accordingly, will likewise award fees equivalent to 75% of the Matrix rate.

### 2.  *Clerical Tasks*

Finally, Defendant quibbles with two entries documenting the work of paralegals performing "clerical tasks [that] are . . . non-billable overhead."  Def. Opp. at 13–14.  The two entries in question — one from January 7, 2015, and one from April 13, 2015 — memorialize, respectively, twenty minutes and thirty minutes of work.  The latter entry, moreover, was clearly not purely clerical, since the paralegal in question "received <u>and</u> reviewed [an] invoice from [the] independent psychologist."  Pl. Mot., Exh. 1 (Invoice) at 8 (emphasis added).  As to the former — that is, the twenty-minute entry — the Court must cite the hoary Latin maxim, *de minimis non curat lex*.  No reduction is needed.

### C.  <u>Calculations</u>

Only the numbers remain.  In calculating the fees award here, the Court: (1) takes the number of hours reasonably expended; and (2) multiplies by the reasonable hourly rate.  As explained above, the Court will reduce the hours by 50% for lack of success.  At the second step, the Court will calculate the reasonable rate by using 75% of the Matrix number.  One final note:

the calculations are broken up by year running June to May because the rates in the <u>Laffey</u> and USAO Matrices are organized by that timeframe and rise in each successive year.

      1.    *Roberta Gambale*

January 6, 2015–April 28, 2015: (85.81 hours x .5) x ($460 x .75) = $14,802.23

Gambale also expended one hour of travel time, for which she charged half her usual rate. The Court will thus reimburse this at half the IDEA rate.

April 14, 2015: (1 hour travel time x .5) x ($460 x .75 x .5) = $86.25

TOTAL: $14,888.48

      2.    *Robert Jones*

February 6, 2015–May 31, 2015: (9.17 hours x .5) x ($300 x .75) = $1031.63

June 1, 2015–May 31, 2016: (12 hours x .5) x ($332 x .75) = $1494

June 1, 2016–May 31, 2017: (55.8 hours x .5) x ($395 x.75) = $8265.38

June 1, 2017–May 31, 2018: (.3 hours x .5) x ($410 x .75) = $46.13

June 1, 2018–October 1, 2018: (6.2 hours x .5) x ($417 x .75) = $969.53

TOTAL: $11,806.67

      3.    *Paralegal Services*

January 6, 2015–May 8, 2015: (20.34 hours x .5) x ($150 x .75) = $1144.13

TOTAL: $1144.13

      4.    *Costs*

Defendant "does not object to any of the itemized costs on Plaintiffs' invoice." Opp. at 17. The Court will, accordingly, order Plaintiffs reimbursed $691.34 for costs.

     \*     \*     \*

The grand total — adding Gambale's $14,888.48, Jones's $11,806.66, the paralegals' $1144.13, and costs of $691.34 — thus amounts to $28,530.62.

## III.    Conclusion

For these reasons, the Court will grant in part and deny in part Plaintiffs' Motion for Attorneys' Fees.  A separate Order awarding $28,530.62 will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  November 27, 2018